[Cite as *In re A.R.*, 2017-Ohio-5739.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| IN THE MATTER OF: A.R. | : | JUDGES: | |
| D.R. | : | Hon. W. Scott Gwin, P.J. | |
| G.R. | : | Hon. Craig R. Baldwin, J. | |
| | : | Hon. Earle E. Wise, J. | |
| | : | | |
| | : | Case No. 17-CA-17 | |
| | : | 17-CA-18 | |
| | : | 17-CA-19 | |
| | : | | |
| | : | O P I N I O N | |


CHARACTER OF PROCEEDING:     Appeal from the Licking County
Court of Common Pleas, Juvenile
Division, Case Nos. F2015-0034,
F2015-0035, F2015-0036


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     July 3, 2017


APPEARANCES:

For Plaintiff-Appellant M.R.

CAROLYNN E. FITTRO
Fittro Law, LLC
1335 Dublin Rd., Suite 104D
Columbus, Ohio 43215


For Plaintiff-Appellant R.R.

JERMAINE COLQUITT
33 W. Main St., Ste. 106
Newark, Ohio 43055

For Defendant-Appellee

WILLIAM C. HAYES
Prosecuting Attorney

By: MANDY R. DELEEUW
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Fl.
Newark, Ohio 43055


GUARDIAN AD LITEM

MICHAEL DALSANTO
33 West Main St., Ste. 106
Newark, Ohio 43055

*Baldwin, J.*

{¶1}   Plaintiff-appellant M.R. appeals from the February 10, 2017 Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her three children to  Licking County Job and Family Services, Children Services Division.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant M.R. (appellant) is the mother of A.R. (DOB 9/22/02), D.R. (DOB 2/16/05) and G.R. (DOB 8/24/06). The children's father is not a party to this appeal.

{¶3}   On January 30, 2015, complaints were filed alleging that the three children were dependent children. The three children had been removed from the family home the day before due to issues of substance abuse and criminal activity. On January 30, 2015, the children were placed in the emergency shelter care custody of Licking County Job and Family Services ("Agency").  Following uncontested adjudicatory and dispositional hearings on March 27, 2015, the children were found to be dependent and placed in the temporary custody of the Agency.

{¶4}   On June 8, 2016, the Agency filed a motion seeking permanent custody of the children. A hearing on the motion was held before a Magistrate on October 17, 2016. The children's father did not appear at the hearing.

{¶5}   At the hearing, appellant appeared via video conference due to her incarceration.  She testified that she was incarcerated at the Ohio Reformatory for Women and was serving a sentence on multiple convictions. Appellant agreed that she had been convicted of two counts of aggravated trafficking in drugs for Oxycodone and two counts of aggravated trafficking in drugs for methamphetamines.  Appellant also had been convicted for aggravated possession of methamphetamines. In May of 2015, appellant

was sentenced to three years of community control, but her community control was revoked in July of 2015 because she tested positive for pain pills. Appellant then was sentenced to 18 months incarceration. Her requests for Judicial Release were denied. Appellant testified that she would be getting released in 13 days and had not seen her children since May of 2015, before her arrest.

{¶6}   Appellant testified that while she was in prison, she participated in a substance abuse treatment program and was selected to participate in the AOD Intensive Prison Program. According to appellant, she started the one program in December of 2015 and the other in February of 2016, but was released from the program after getting into a conflict with a women who she claimed had stolen items from her. Before her release, appellant had attended two individual counseling sessions and had completed 10 weeks of the AOD program. When asked, appellant testified that she was not in a relationship with the children's father who also had been sentenced to prison for drug convictions approximately the same time as appellant.  She testified that her last contact with him had been two days before and that she told him that he needed to turn himself into his parole officer since he had failed to report to the officer.

{¶7}   Appellant testified that when she was released from prison, she was going to sign the case plan to set up visits with her children and get two jobs to save up money. When asked where she planned to live, she testified that she was going to stay at her mentally handicapped sister's and that "[t]hey said if I go to a homeless shelter, then they can help me get into a place." Transcript at 22. Appellant testified that she was going to get her driving privileges back.

{¶8}   On direct examination, appellant testified that she was working on getting her GED and that she had received high marks on her inmate evaluation report while

working at Correctional Food Services. Appellant indicated that she had completed a five week parenting class and done well in the class and that she had been the primary caretaker of her children until the Agency got involved in January of 2015. According to appellant, her relationship with her children was very close.  She testified that she kept in contact with her daughters by phone, but was told by her social worker not to contact her sons over the phone, so she kept in contact with them via letters and cards. Appellant, when asked about where she would look for employment, testified that she would look at McDonald's and also that one of her family members could get her a job through a temp agency. She testified that if she did not get her driving privileges initially, she had people who could transport her to jobs. Appellant indicated that she wanted a six month extension from the court so that she could get work on her plan. Appellant also testified that her back up plan was that her father, who had custody of another child of appellant's, would get legal custody of the three children who are the subject of this case.  According to her, he had passed a home study.

{¶9}    Appellant, who was questioned about her drug use, testified that while in prison, she had been attending NA and AA. She testified that once she was released from prison, she could go back to LAPP (Licking County Alcohol Prevention Program) and attend meetings. Appellant further testified that although she could have obtained drugs while in prison, she chose not to do so to and passed random drug screens.  Appellant further indicated that she intended to have a sponsor once she was released in order to maintain her sobriety.

{¶10} Kelcey Weisenstein, a social worker with Licking County Children's Services, testified that she was assigned to the case on February 13, 2015 to develop a case plan. She testified that there had been a drug raid at appellant's home on January

29, 2015 and that appellant and her husband were arrested. Weisenstein testified that the case plan concerned substance abuse and stable housing. According to Weisenstein, appellant was incarcerated at the onset of the case plan, but by the time she was assigned the case, appellant was out of jail. The following testimony was adduced when she was asked what concerns were identified on the case plan as they relate to appellant:

**{¶11}** A. Okay. Drug and alcohol counseling. Follow through with any treatment. Stable income; stable housing appropriate for the children; meeting all their basic needs. Negative drug screens. No more criminal involvement. Not hanging around people using or abusing substances. Signing releases. I believe that's it.

**{¶12}** Transcript at 46.

**{¶13}** Appellant was asked to complete an AOD assessment and follow the recommendation, complete drug screens, and obtain income and provide verification. She also was required to obtain appropriate housing and attend her visits. Weisenstein testified that she did not believe that appellant had met the objectives of her case plan because "on her AOD paperwork it said she was discharged unsuccessfully with one two individual meetings with the therapist." Transcript at 49. When asked if she believed that appellant had remedied the problems that existed at the onset of the case, she indicated that appellant had not and had not completed a case plan. Weisenstein voiced concerns about appellant's sobriety and housing and noted that she had a relapse right before she was sent to prison.

**{¶14}** Weisenstein was questioned about the children. She testified that all three were on IEPs (individualized education programs). A.R., according to her, had struggled in school and was suspended for saying that she had a bomb. A.R. was removed from the foster home that she was in at the time and placed into another foster home.

Weisenstein further testified that A.R. had been suspended for saying inappropriate things to a girl and had been threatening other girls and disobeying authority figures. A.R. had been sent to a gender specific program and completed the same successfully. According to Weisenstein, A.R.'s behavior was up and down and she expressed frustration with her parents.

{¶15} While G.R. was doing very well, D.R. had been removed from his foster home due to aggressive behavior and defiance of authority figures. He was sent to a treatment center where he was doing better. Weisenstein testified that when G.R. and D.R. had been placed in the same foster home at the onset of the case, D.R. was touching G.R. inappropriately. She testified that G.R. recently also was exhibiting sexualized behaviors. Weisenstein testified that G.R. was doing very well in his foster home and that he wanted to be adopted by them.

{¶16} When asked whether she had looked into relative or kinship placement for the three children, Weisenstein testified as follows:

A.  Other than J.S. [appellant's father] there's no appropriate family members. And, as of right now, the agency doesn't believe it's in the best interest of the children to be - - to be placed there.

Q.  And could you elaborate as to why.

A.  Due to the children's significant behaviors.  D.R. and G.R., I don't think it's in their best interest to be in the same bedroom due to the sexualized behaviors.  And the girls - - excuse me.  [J.S.] has one extra bedroom and I - - due to the intense behaviors of A.R. and also [J.S.'s] health is still a concern.  He has, I believe, stage four lung cancer and is completing his treatment, but again, that's a big concern

as well, just his health, and if he's going to be able to maintain four children in his home. I don't - - I don't think that's even fathomable.

**{¶17}** Transcript at 55. She testified that no other relatives or kinship placement had come forward and that appellant had not had face-to-face contact with the children since May of 2015. While appellant had written letters to them, the last letter that Weisenstein found in her file was from February of 2016. According to Weisenstein, appellant had not alleviated the problems that led to removal. She testified that other than creating a case plan, she offered appellant and her husband referrals to LAPP and visits and provided monthly contact with the children unless they were incarcerated. She was of the opinion that the children should not be placed with either appellant or their father and that it was in the children's best interest for permanent custody to be granted to the agency in hopes for adoption of all three of the children.

**{¶18}** The Guardian ad Litem recommended that the children be placed in the permanent custody of the Agency.

**{¶19}** The Magistrate, in a Decision filed on November 4, 2016, recommended that the motion for permanent custody be granted. Appellant then filed objections to the Magistrate's Decision. As memorialized in a Judgment Entry filed on February 10, 2017, the trial court denied the objections and approved and adopted the Magistrate's Decision. The trial court terminated appellant's parental rights and granted permanent custody of the three children to the Agency.

**{¶20}** Appellant now raises the following assignments of error on appeal:

**{¶21}** I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTERESTS OF A.R., D.R. AND G.R. TO PERMANENTLY TERMINATE THE

PARENTAL RIGHTS OF THEIR PARENTS AND PLACE THEM IN THE PERMANENT CUSTODY OF LICKING COUNTY JOB AND FAMILY SERVICES, CHILDREN'S SERVICES DEPARTMENT.

**{¶22}** II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT A.R., D.R., AND G.R. COULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH THEIR MOTHER.

I, II

**{¶23}** Appellant, in her two assignments of error, challenges the trial court's order terminating her parental rights and granting permanent custody of her three children to the Agency. Appellant specifically challenges the trial court's findings that the children could not and should not be placed with her within a reasonable time and that it was in their best interest for permanent custody to be granted.

**{¶24}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court

must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶25} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997–Ohio–260, 674 N.E.2d 1159.

{¶26} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶27} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending.

{¶28} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court

will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶29}** In the case sub judice, the trial court found that R.C. 2151.414(B)(1)(a) applied. Pursuant to R.C. 2151.414(B)(1)(a), the trial court found the children could not be placed with either of the children's parents within a reasonable time or should not be placed with the children's parents. In making this decision, the trial court must consider the factors of R.C. 2151.414(E). The trial court specifically found that R.C. 2151.414(E)(1), (4) , (14) and (16) applied to appellant.

**{¶30}** R.C. 2151.414 states, in relevant part, as follows:

**{¶31}** (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

**{¶32}** (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether

the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

**{¶33}** ;...

**{¶34}** (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;...

**{¶35}** (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child....

**{¶36}** (16) Any other factor the court considers relevant.

**{¶37}** In the case sub judice, there was testimony that appellant was unsuccessful in addressing her substance abuse problems. Although appellant had been placed on community control in May of 2015 after drug convictions, she tested positive for drugs on June 1, 2015. Her community control was revoked and she was sentenced to 18 months in prison. While appellant was enrolled in an intensive prison program for alcohol and other drugs, she was kicked out of the program after getting into a conflict with another inmate. In addition, during her time in the program, appellant only completed two individual counseling sessions. As noted by appellee, because appellant was unable to complete an AOD assessment, pass a drug test, obtain income of housing, she made no progress on her case plan.

**{¶38}** In addition, there was testimony at the hearing that appellant had been incarcerated since June of 2015 and that her last face-to-face contact with her children was in May of 2015. Appellant last communicated with her children in February of 2016. Due to her repeated incarceration, appellant was unable to care for her children.

**{¶39}** Based on the foregoing, we find that there was clear and convincing evidence supporting the trial court's finding that appellant had continuously and repeatedly failed to substantially remedy the conditions causing the children to be placed outside the home and that the children could not be placed with either parent within a reasonable time or should not be placed with either parent.

**{¶40}** Appellant also challenges the trial court's finding that it was in the best interest of the children for permanent custody to be granted to the agency. R.C. 2151.414(D) states as follows:

**{¶41}** (1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

**{¶42}** (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

**{¶43}** (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶44}** (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period,

or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶45} (d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶46} (e)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶47} There was testimony at the hearing that the children, all whom had "significant behaviors" and were on IEPs, had been in the custody of the Agency since January of 2015. Transcript at 55. Weisenstein testified that G.R. was in a foster-to-adopt placement and wanted to be adopted by his foster family. Weisenstein testified that while the other two child did not have adoptive homes, their behavior had improved, making adoption more possible. While the Guardian ad Litem, at the hearing, indicated that A.R. and D.R. indicated to him that they either wanted to be with their grandfather, who has lung cancer, or reunified with their parents, he did not believe that it was in the best interest because he did not believe that appellant and the children's father could provide a stable environment. He stated at the hearing that the children needed a legally secure placement and that the evidence showed that such placement could not be achieved without a grant of permanent custody.

**{¶48}** Based on the foregoing, we find that there was clear and convincing evidence that it was in the best interest of the children for permanent custody to be granted to the agency.

**{¶49}** Appellant's two assignments of error are, therefore, overruled.

**{¶50}** Accordingly, the judgment of the Licking County Court of Common Pleas, Juvenile Division, terminating appellant's parental rights and granting permanent custody of appellant's three children to Licking County Job and Family Services, Children Services Division is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Earle Wise, J. concur.

[Cite as *In re A.R.*, 2017-Ohio-5739.]